DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} Wooster Police arranged for a confidential informant to buy drugs at an apartment on Palmer Street in Wooster. While the informant waited in the apartment, the occupant of the apartment, Charlene Cowling, made several telephone calls. Ms. Cowling then left the apartment and met Ebon Parker. She and Mr. Parker returned to the apartment, and, a short time later, the informant left with a small rock of what appeared to be crack cocaine. Police entered the apartment and arrested both Ms. Cowling and Mr. Parker. Following a bench trial, the trial court convicted Mr. Parker of selling crack cocaine. He has argued on appeal that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. He has also argued that his trial lawyer was ineffective for failing to obtain Ms. Cowling's telephone records, which, according to him, would have shown that she had not called him on the day of his arrest. This Court affirms Mr. Parker's conviction because it is supported by sufficient *Page 2 
evidence and is not against the manifest weight of the evidence and because this Court cannot speculate about what the missing telephone records might have shown.
 SUFFICIENCY {¶ 2} Mr. Parker's first assignment of error is that his conviction is not supported by sufficient evidence. Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. State v. Thompkins, 78 Ohio St. 3d 380, 386 (1997); State v.West, 9th Dist. No. 04CA008554, 2005-Ohio-990, at ¶ 33. This Court must determine whether, viewing the evidence in a light most favorable to the prosecution, it would have convinced an average fact finder of Mr. Parker's guilt beyond a reasonable doubt. State v. Jenks,61 Ohio St. 3d 259, paragraph two of the syllabus (1991).
 {¶ 3} The State called four police officers and the confidential informant as witnesses at Mr. Parker's trial. They all described their involvement in the events that led to Mr. Parker's arrest.
 {¶ 4} On the day of the arrest, one of the officers searched the confidential informant and placed a transmitter on him. Another officer gave him two twenty-dollar bills, which had been photocopied, and drove him to a location near Ms. Cowling's apartment. An officer monitored the transmitter, while other officers watched the area around Ms. Cowling's apartment.
 {¶ 5} The informant went to Ms. Cowling's apartment and knocked on the door. She let him in, and he asked her if she had some drugs. She responded that she did. He then waited in the apartment while she used her cell phone to make a number of calls.
 {¶ 6} One of the officers, Patrolman Hall, testified that he watched the front door of Ms. Cowling's apartment. He said that, after the informant went in, he saw a person he later *Page 3 
identified as Ms. Cowling come out of the apartment three times, look around, and go back in. She came out a fourth time and walked south on Palmer Street toward Bowman Street. Patrolman Hall followed her and saw her cross Bowman Street. He said that, as he was following her, he noticed a marked police car in a parking lot near the corner of Palmer and Bowman. After Ms. Cowling crossed Bowman Street, Patrolman Hall lost sight of her for ten to fifteen seconds. A second officer, Officer DeFelice, with whom Patrolman Hall was in radio contact, told him that no transaction had taken place and that Ms. Cowling had turned around and was headed back north on Palmer. Patrolman Hall followed her back to the apartment and saw her go back inside.
 {¶ 7} Officer DeFelice testified that he had been doing mobile surveillance, "circling around the area." He testified that Patrolman Hall had told him that someone had left the apartment and was walking south on Palmer. He said he saw Ms. Cowling walk south on Palmer to the area of a beverage store called the Ice House, where she turned around and headed back north.
 {¶ 8} Officer DeFelice also testified that he had seen a second person, who he later identified as Mr. Parker, walking north on Palmer from the vicinity of Leroy's Bar toward the Ice House. According to Officer DeFelice, Ms. Cowling and Mr. Parker did not meet. Rather, when Ms. Cowling turned around and headed back north, Mr. Parker turned around and headed back south.
 {¶ 9} Patrolman Hall testified that, a short time after Ms. Cowling had gone back in the apartment, she came out again. He said she was talking on her cell phone. She then went back in the apartment and, a short time later, came out and again walked south on Palmer. Patrolman Hall again followed her. This time, she met Mr. Parker in the vicinity of the Ice House, and she *Page 4 
and Mr. Parker walked back toward the apartment together. Patrolman Hall testified that he went to the Ice House to avoid being seen by Ms. Cowling and Mr. Parker. He lost sight of them and hurried back to the spot from which he could see the apartment, but did not see them again. He testified that he assumed they had gone in the apartment.
 {¶ 10} Patrolman Hall continued to watch the apartment until he saw the informant come out. Officers met the informant and found what appeared to be a small rock of crack cocaine in his pocket. The Ohio Bureau of Criminal Identification and Investigation later determined that the small rock weighed . 14 grams and that it tested positive for cocaine.
 {¶ 11} A number of officers then went to the apartment and arrested Ms. Cowling and Mr. Parker. They found the two twenty-dollar bills that they had previously given the informant in Mr. Parker's pocket. They also found an additional $157 in cash on him, along with a small bag of what appeared to be marijuana. During a search of the apartment, they found three large rocks and several smaller pieces of what appeared to be crack cocaine in a closet under clothes belonging to Ms. Cowling. The Bureau of Criminal Identification and Investigation later determined that this suspected crack weighed .52 grams and that it also tested positive for cocaine.
 {¶ 12} Mr. Parker was convicted of violating Section 2925.03(A)(1) of the Ohio Revised Code. That section provides that "[n]o person shall knowingly . . . [s]ell or offer to sell a controlled substance." Identification of the type of controlled substance involved is an essential element of a violation of Section 2925.03(A)(1). State v.Headley, 6 Ohio St. 3d 475, paragraph two of the syllabus (1983). Since the indictment charged Mr. Parker with selling or offering to sell crack cocaine, the issue presented by Mr. Parker's first assignment of error is whether there *Page 5 
was evidence before the trial court that, if believed, would have convinced an average fact finder beyond a reasonable doubt that he knowingly sold or offered to sell crack cocaine.
 {¶ 13} Mr. Parker has argued that the evidence was insufficient to prove that the substance found in the informant's pocket and in Ms. Cowling's closet was crack cocaine. He has also argued that the evidence was insufficient to prove that he sold that substance, whatever it was, to the informant and Ms. Cowling.
 {¶ 14} Mr. Parker has pointed out that the reports from the Ohio Bureau of Criminal Identification and Investigation regarding the analysis of the suspected crack cocaine confiscated from the informant and Ms. Cowling's closet only indicate that the rocks tested positive for cocaine, not that they were crack cocaine. The rocks, themselves, however, were in evidence before the trial court, and one of the officers who participated in the arrests, Officer McConnell, testified that crack cocaine is a solid form: "It's a rock like form. It's hard. It often times breaks up in crumbs or chunks." The trial court had the ability to examine the suspected crack and determine that it was in the form of rocks, not powder. That, coupled with the fact that the rocks tested positive for cocaine, was sufficient to prove that they were crack cocaine.
 {¶ 15} There was no direct evidence that Mr. Parker sold the crack to Ms. Cowling or to Ms. Cowling and the informant. There was, however, circumstantial evidence that he had done so. "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." State v.Jenks, 61 Ohio St. 3d 259, paragraph one of the syllabus (1991).
 {¶ 16} Officer McConnell testified that, based on his experience, it is common for a person to provide a location at which someone else sells drugs and the person providing the location gets part of the money paid for the drugs or drugs in return. In this case, the trial court *Page 6 
could infer from Ms. Cowling's having kept the confidential informant waiting while she made telephone calls and went to meet Mr. Parker, that she did not have drugs at the apartment, but rather telephoned Mr. Parker to have him bring drugs to the apartment so the transaction could be completed. It could have concluded either that Mr. Parker sold drugs to Ms. Cowling and that she, in turn, resold a rock to the informant, or that he sold the drugs found in Ms. Cowling's closet to her and directly sold the rock found in the informant's pocket to him. The fact that the money given the informant was found on Mr. Parker, along with an additional $157 in cash, would have supported either inference.
 {¶ 17} There was evidence before the trial court that, if believed, proved beyond a reasonable doubt that Mr. Parker sold crack cocaine to Ms. Cowling or to Ms. Cowling and the confidential informant. Accordingly, Mr. Parker's conviction was supported by sufficient evidence, and his first assignment of error is overruled.
 MANIFEST WEIGHT {¶ 18} Mr. Parker's second assignment of error is that his conviction is against the manifest weight of the evidence. When a defendant argues that his conviction is against the manifest weight of the evidence, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten, 33 Ohio App. 3d 339, 340 (1986).
 {¶ 19} This Court reviewed the evidence supporting Mr. Parker's conviction in considering his sufficiency argument. The only evidence he presented at trial was his own testimony. *Page 7 
 {¶ 20} Mr. Parker testified that, on the day of his arrest, he had been at a friend's house on Bowman Street. He said that he had telephoned Leroy's Bar and placed an order for chicken wings. When he left to pick up the wings, according to him, "everybody else wanted something," so he walked to LeRoy's and placed an order for what his friends wanted. He testified that, while his friends' orders were being prepared, he walked up to the Ice House to get something to drink, where he ran into his cousin, Ms. Cowling. He said that he asked her about $60 she owed him and she said that, if he would come back to her apartment, she would pay him $40 of it. He said that, when he went in the apartment, he saw the informant. According to Mr. Parker, he used the bathroom and, when he returned to the room where the informant was, the informant left. He testified that Ms. Cowling then gave him the $40 and, a few minutes later, police arrived and arrested both him and Ms. Cowling. He denied having anything to do with the crack. He testified that $7 of the other cash he had on him was money for the orders at Leroy's and the remaining $150 was money his girlfriend had given him to use to have his driver's license reinstated. He denied having walked north from Leroy's toward the Ice House twice, insisting he had only done so once. He has also argued that, if he was delivering drugs to Ms. Cowling, he could have given them to her on the street rather than accompanying her to the apartment.
 {¶ 21} This Court cannot conclude that the trial court lost its way and created a manifest miscarriage of justice by rejecting Mr. Parker's explanation for the events on the day of his arrest and accepting the inferences properly drawn from the evidence. In particular, it is noteworthy that accepting Mr. Parker's story would mean that Officer DeFelice was mistaken or lied when he testified that Mr. Parker had twice walked north on Palmer, turning around the first time at a point close to a marked police cruiser. It also would not explain why Ms. Cowling left the *Page 8 
informant sitting in her apartment while she made telephone calls and twice left her apartment. There is no obvious explanation for Ms. Cowling leaving her apartment to meet Mr. Parker and him then accompanying her to her apartment. Perhaps they changed their plans. Regardless, the trial court did not lose its way and create a manifest miscarriage of justice by convicting Mr. Parker of selling or attempting to sell crack cocaine. His second assignment of error is overruled.
 TELEPHONE RECORDS {¶ 22} Mr. Parker's third assignment of error is that his trial lawyer was ineffective for failing to obtain Ms. Cowling's telephone records, which, according to him, would have shown that she did not call him on the day of his arrest. In order to demonstrate that his lawyer was ineffective, Mr. Parker would have to show that his lawyer's performance was deficient and that he was prejudiced by the deficiency.Strickland v. Washington, 466 U.S. 668, 687 (1984).
 {¶ 23} Even if this Court were to assume that Mr. Parker's lawyer was deficient for not obtaining Ms. Cowling's telephone records, it could not conclude that Mr. Parker was prejudiced by that deficiency. Mr. Parker's position is similar to that of a defendant who argues on direct appeal that his trial lawyer was deficient for not calling a particular witness. Without knowing what the witness's testimony would have been, the appellate court cannot conclude that the testimony would have led to a different outcome in the trial court. See State v. Peck, 2d Dist. No. 21354, 2006-Ohio-5796, at ¶ 65. In this case, without knowing what Ms. Cowling's telephone records would have shown, this Court cannot conclude that his trial lawyer was ineffective for not obtaining them and offering them in evidence. Mr. Parker's third assignment of error is overruled. *Page 9 
 CONCLUSION {¶ 24} Mr. Parker's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. Further, his lawyer was not ineffective for failing to obtain Ms. Cowling's telephone records. His assignments of error are overruled, and his conviction is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.
 Whitmore, J., Moore, P. J., concur. *Page 1